U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed February 26, 2009**

**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| IN RE: | § | Chapter 11 |
| | § | |
| Home Interiors & Gifts, Inc. | § | Case No. 08-31961 |
| a Texas Corporation | § | |
| *et al.* | § | |
| Debtors.[1] | § | (Jointly Administered) |

**ORDER PURSUANT TO 11 U.S.C. § 363 AND FED. R. BANKR. P. 2002 AND 6004**
**APPROVING AND AUTHORIZING THE SALE OF THE CAPITAL STOCK OF HOME**
**INTERIORS de MEXICO, S de RL de CV, AND HOME INTERIORS de MEXICO, S.A.**
**de C.V. AND CERTAIN OTHER ASSETS FREE AND CLEAR OF ALL**
**LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS**

On February 5, 2009, Dennis Faulkner, Chapter 11 Trustee (the "Trustee") for Home

Interiors & Gifts, Inc., a Texas Corporation, including its wholly owned debtor subsidiaries,

(collectively the "Debtors") filed the *Amended Motion for Order Approving and Authorizing the*

*Closing of the Sale of the Capital Stock of Home Interiors de Mexico, S de RL de CV, and Home*

*Interiors Services de Mexico, S.A. de C.V. and Certain Other Assets Free and Clear of All Liens,*

---

1. The remaining debtors include (i) Dallas Woodcraft Company, LLC, a Delaware Limited Liability Company, Case No. 08-31960, (ii) DWC GP, LLC, a Delaware Limited Liability Company, Case No. 08-31961 (iii) Titan Sourcing, LLC, a Delaware Limited Liability Company, Case No. 08-31964, (iv) Laredo Candle Company, LLC a Texas Limited Liability Company, Case No. 08-31965, (v) HIG Holdings, LLC, a Texas Limited Liability Company, Case No. 08-41855, and (vi) Home Interiors de Puerto Rico, Inc., a Delaware Corporation, Case No. 08-31967.

*Claims, Encumbrances, and Interests* at docket no. 927 (the "Sale Motion"). Home Interiors de Mexico, S de RL de CV, and Home Interiors Services de Mexico, S.A. de C.V. are collectively called (the "Mexican Entities").

On February 25, 2009, Home Interiors & Gifts, Inc., a Texas corporation ("HIG"), and DWC GP, LLC, a Delaware limited liability company ("DWC") as sellers (collectively, the "Selling Debtors"), entered into a Stock Purchase Agreement dated that day (the "SPA") with Marks Hill Mexico Direct Selling I, LLC, a Texas limited liability company, and Marks Hill Mexico Direct Selling II, LLC, a Texas limited liability company, as buyers (collectively "Buyer"), to sell the capital stock of the Mexican Entities and certain related assets (collectively, the "Purchased Assets"). A true copy of the SPA is attached to this order. The SPA memorializes the terms of the sale that the Trustee now asks this Court to approve (the "Sale").

On February 24, 2009, at docket no. 955, the Trustee reported as follows: an auction (the "Auction") was held on February 23 morning pursuant to the Sale Motion, which incorporates by reference the Bid Procedures set forth as Exhibit A to the Amended Motion, etc., filed in the Bankruptcy Court on November 3, 2008 at docket no. 726 (the "Bid Procedures), and refers to the order entered by the Bankruptcy Court on December 3, 2008 at docket no. 850 (the "Bid Procedures Order"). Also on February 24, at docket no. 957, the Trustee filed a Designation of Witnesses and Exhibits, etc., that included as Exhibit no. 1 the identified and attached SPA.

The Court held a hearing on the Sale Motion (the "Sale Hearing") as scheduled on February 25, 2009. After all parties in interest were granted an opportunity to be heard, and after due deliberation, and having determined that the relief requested in the Sale Motion is in the best interests of the Debtors and their estates,

**THE COURT HEREBY FINDS AND DETERMINES THAT:[2]**

---

2. The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law under Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014. All findings of fact and conclusions of law

**Jurisdiction, Final Order and Statutory Predicates**

A-1.    The Court has jurisdiction to hear and determine the Sale Motion and over the transactions contemplated by the SPA and other ancillary documents and agreements relating thereto, (collectively, the "Transaction Documents") pursuant to 28 U.S.C. § 157(b)(1) and 1334(a).[3]

A-2.    This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O).

A-3.    Venue is proper in the Court (and accordingly in this district) pursuant to 28 U.S.C. §§ 1408 and 1409.

A-4.    The Debtors filed their voluntary petitions in this Court for relief under 11 U.S.C. chapter 11 on April 29, 2008.

A-5.    A committee of unsecured creditors under 11 U.S.C. § 1102(a) (the "Committee") was appointed; it held its formative meeting on May 14, 2008.

A-6.    The Trustee was appointed trustee following the order entered on November 25, 2008, at docket no. 833, granting the motion to appoint a trustee.  On November 25, 2008, at docket no. 835, the United States Trustee filed an application to appoint the Trustee as trustee. The Court granted that application by order entered on November 26, 2008 at docket no. 839.

A-7.    This order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") 6004(h), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court

---

announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

3.  Unless otherwise stated, all capitalized terms not defined in this order shall have the same meanings as set forth in SPA.

expressly finds that there is no just reason for delay in the implementation of this order, and expressly directs entry of judgment as set forth herein.

A-8. The statutory predicates for the relief requested in the Sale Motion are 11 U.S.C. §§ 349, 363(b), (f), and (m), and 1146(a) and Bankruptcy Rules 2002(a)(2), 6004(a), (b), (c), (e), (f), and (h), 9007, and 9014.

<b><u>Notice and Timing</u></b>

A-9. Actual written notice of the Sale Hearing, the Auction, the Sale Motion, and the Sale and a reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein have been afforded to all interested persons and entities, including, but not limited to: (i) the United States Trustee for the Northern District of Texas; (ii) counsel to the Committee; (iii) counsel to the Debtor's pre-petition secured lenders; (iv) all taxing authorities having jurisdiction over any of the Purchased Assets, including the Internal Revenue Service; (v) all parties that have requested special notice pursuant to Bankruptcy Rule 2002; (vi) all persons or entities with a lien on, or security interest in, any of the Purchased Assets known to the Debtors, (vii) all potential buyers known by the Debtors; and (viii) all of the Debtors' creditors.

A-10. As evidenced by the certificates of service previously filed with the Court: proper, timely, adequate, and sufficient notice of the Sale Motion, the Auction, the Sale Hearing, and the Sale has been provided in accordance with 11 U.S.C. §§ 102(1) and 363 and Bankruptcy Rules 2002, 6004, and 9014. The Debtors have also complied with all obligations to provide notice of the Sale Motion, the Auction, the Sale Hearing, and the Sale required by the Bid Procedures Order. The notice described above was good, sufficient and appropriate under the circumstances, and no other or further notice of the Sale Motion, the Auction, the Sale Hearing, the Sale or the assumption and assignment of the Assigned Contracts, is required.

A-11.  Sale Motion, Section B at p. 8 of 9 requests a modification of the Bid Procedures to permit a Bid Deadline of February 19, 2009, and an Auction to be held the next day.  In addition, Bid Procedures Section O, at page 9 of 10, provides that the Trustee may without court approval extend the Bid Deadline and the Auction date further.  In order to receive the highest and/or best price for the Purchased Assets, the Trustee, after consultation with Houlihan (defined below) and others, the Trustee first extended the Bid Deadline to February 19th, and scheduled the Auction for February 20th.  He then further extended the Bid Deadline and the Auction Date to Monday afternoon, February 23rd.  These changes were necessary and proper given the circumstances.  The Court specifically finds that the Trustee's actions were proper, and expressly grants request for relief in the Sale Motion identified above in this paragraph.

A-12.  At the Sale Hearing, the Court granted the Trustee's *Motion to Shorten Time and Limit Notice as to the i) Amended Motion to Approve the Sale of HIG-Mexico Stock; and ii) Motion To Approve the Sale of Computer Equipment to the Buyer*, filed on February 5, 2009, at docket no. 931.  No further notice is necessary.

A-13.  The disclosures made by the Debtors concerning the Transaction Documents, the Sale, and the Sale Hearing were complete and adequate.

### Good Faith

A-14.  Neither the Buyer nor its affiliate, Home & Garden Party, Ltd, is an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101(31).

A-15.  The Transaction Documents and each of the transactions contemplated thereby were negotiated, and have been and are undertaken, by the Debtors and the Buyer at arm's length, without collusion or fraud, and in good faith within the meaning of 11 U.S.C. § 363(m).  An Auction was held in accordance with the Bid Procedures Order and the relief set forth in this order, including the acts set forth in paragraph A-11 above.  As a result of the foregoing, the

Debtors and the Buyer are entitled to the protections of 11 U.S.C. § 363(m). Neither the Debtors nor the Buyer have engaged in any conduct that would cause the Sale to be avoided under 11 U.S.C. § 363(n).

## Highest and Best Offer

A-16. The procedures set forth in the Bid Procedures afforded a full, fair and reasonable opportunity for any entity to make an offer to purchase the Purchased Assets. The Auction was duly noticed, and a reasonable opportunity has been given to any interested party to make a higher and better offer. Other entities expressed any interest in submitting a bid, but no other entities submitted bids. The Buyer participated in the Auction and complied with the Bid Procedures Order.

A-17. The Transaction Documents constitute the highest and best offer for the Purchased Assets, and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. The Trustee's determination that the Transaction Documents constitute the highest and best offer for the Purchased Assets constitutes valid and sound exercise of his business judgment.

A-18. The Transaction Documents represent a fair and reasonable offer to purchase the Purchased Assets under the circumstances of this chapter 11 case. No other entity or group of entities has offered to purchase the Purchased Assets for greater economic value to the Debtors' estates than the Buyer.

A-19. Approval of the Transaction Documents and the consummation of the transactions contemplated thereby are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

A-20. Both before and after the Trustee's appointment, the Debtors demonstrated compelling circumstances and a good, sufficient, and sound business purpose and justification

for the Sale prior to, and outside of, a plan of reorganization, including but not limited to the following: (i) there is risk of immediate and irreparable loss of value of the Purchased Assets if the Sale is not consummated; (ii) there is substantial risk of deterioration in the Mexican Entities' relations with their consultants and their ultimate purchasers; (iii) it is difficult for the Mexican Entities to maintain existing, or to establish new, customers or suppliers, particularly, although not exclusively, because the Mexican Entities have no funds to buy spring inventory; and (iv) a sale of the Purchased Assets will realize more value than a reorganization of that segment of the Debtors' businesses.

**Particular Aspects of this Sale**

A-21. **Purchase Price.** SPA § 2.03 provides for a purchase price ("Purchase Price") of $1,250,000.

A-22. **Non-Stock Assets**. The Debtors are conveying to the Buyer any and all trademarks related to the operation of the Mexican Entities for no additional consideration.

A-23. **Pre-Petition Agent's and Pre-Petition Lenders' Consent and release of Mexican Entities' Guaranties.** Pursuant to that certain $370,000,000 Credit Agreement between Debtor Home Interiors & Gifts, Inc. and NexBank, SSB, as administrative agent (in such capacity, the "Pre-Petition Agent") for itself and certain financial institutions (the "Pre-Petition Lenders") dated as of March 31, 2004, as amended (the "Pre-Petition Credit Facility"), the Pre-Petition Agent asserts, as secured party for the benefit of the Pre-Petition Lenders, a first priority perfected security interest in substantially all of the Purchased Assets. Proceeds of the Sale are not sufficient to satisfy the Pre-petition Lenders' secured claims. Despite that deficiency, the Pre-petition Agent and the Pre-petition Lenders consent to the sale of the Purchased Assets, i.e., to the Sale, under the terms of this order, including in particular the provisions below concerning distribution of Sale proceeds.

A-24. **Pre-Petition Agent's and Pre-Petition Lenders' Release of Mexican Entities' Guaranties.** In addition to the consents set forth in the paragraph above, the Pre-Petition Agent and the Pre-Petition Lenders consent to release, and hereby release, any guaranty or other obligation of either or both Mexican Entities to the payment of any obligations arising from the Pre-Petition Credit Facility.

A-25. **Houlihan Lokey.** Houlihan Lokey Howard and Zukin Capital, Inc. ("Houlihan") and the Debtors agreed upon a transaction fee in full satisfaction of any transaction fee owed in connection with the sale of the Purchased Stock. Houlihan and the Debtors also agreed that the Debtors would reimburse Houlihan for its out-of-pocket expenses in connection with the Sale. This transaction fee and payment of out-of-pocket expenses was approved in the Order Authorizing Debtors to Employ and Retain Houlihan Lokey Howard & Zukin Capital, Inc., as Investment Bankers and Financial Advisor Nunc Pro Tunc to September 19, 2008. at Docket No. 684.

## No Fraudulent Transfer

A-26. The consideration that the Buyer provides through the Transaction Documents constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession or the District of Columbia.

## Validity of Transfer

A-27. Through the Trustee, each of the Selling Debtors has full corporate power and authority to execute and deliver the Transaction Documents and all other documents contemplated thereby and to consummate the transactions contemplated by the Transaction Documents, and no further consents or approvals are required for the Selling Debtors to consummate the transactions contemplated by the Transaction Documents, except as otherwise set forth in the Transaction Documents.

A-28.   The transfer of each of the Purchased Assets to the Buyer will be as of the Closing Date a legal, valid, and effective transfer of such assets, and vests or will vest the Buyer with all right, title, and interest of the Debtors to the Purchased Assets free and clear of all interests, claims, liens and encumbrances against the Debtors, its estate or the Purchased Assets (collectively, "Interests'').

## 11 U.S.C. § 363(f) Is Satisfied

A-29.   The Debtors may sell the Purchased Assets free and clear of Interests because, in each case, at least one standard set forth in 11 U.S.C. § 363(f)(l)-(5) has been satisfied.   Those holders of Interests who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to 11 U.S.C. § 363(f)(2).   Any holders of Interests who did object fall within one or more of the other subsections of 11 U.S.C. § 363(f) and are adequately protected by having their Interests, if any, in each instance against the Debtors, or their estates, as applicable, attach to the proceeds of the Sale ultimately attributable to the Purchased Assets in which such creditor alleges an Interest, in the same order of priority, with the same validity, force and effect that such creditor had prior to the Sale, subject to any otherwise valid claims and defenses.   The Buyer would not have entered into the SPA and will not consummate the proposed Sale unless the Buyer is afforded the protection of a Sale free and clear of all Interests as authorized herein.   In that event, the Debtors, their estate and their creditors would be adversely affected.

## Compelling Circumstances for an Immediate Sale

A-30.   To maximize the value of the Purchased Assets and preserve the viability of the business to which the Purchased Assets relate, it is essential that the Sale of the Purchased Assets occur within the time constraints set forth in the SPA.   Time is of the essence in consummating the Sale.

## Seller Shall Not be Affected by Subsequent Dismissal

A-31.   Cause exists under 11 U.S.C. § 349(b) to find that all transfers of property of the estate effected by this order or performance of the SPA shall remain valid and effective notwithstanding a subsequent dismissal of any of these Cases, and 11 U.S.C. § 349(b)(3) shall not apply to the property of the estate which is the subject of this order and the SPA.

## Purchaser Not a Successor

A-32.   Neither the purchase of the Purchased Assets, including the assumption and assignment of the Assigned Contracts, by the Buyer, nor the intended subsequent use of such assets will cause Purchaser to be deemed a successor in respect to the Debtors' business(es), including without limitation the Mexican Entities' business(es), within the meaning of any federal, state or local revenue, pension, ERISA, tax, labor, environmental or products liability law, rule or regulation.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

## General Provisions, Immediate Effect of Order and Distributions at Closing

B-1.   The relief requested in the Sale Motion is granted and approved, including without limitation the relief identified in paragraph A-11 above, and the Sale contemplated thereby is approved as set forth in this order.

B-2.   All objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Sale Motion or by stipulation filed with the Court, and all reservations of rights included therein, are hereby overruled on the merits or the interests of such objections have been otherwise satisfied or adequately provided for.

B-3.   The Transaction Documents introduced as exhibits, and all of the terms and conditions thereof, are hereby approved.

B-4.    The Sale constitutes legal, valid, and effective transfer of the Purchased Assets, and shall vest the Buyer with good and marketable title in and to the Purchased Assets.

B-5.    The consideration provided by the Buyer for the Purchased Assets under the SPA is fair and reasonable, and the Sale may not be avoided under 11 U.S.C. § 363(n).

B-6.    No bulk sales law or any similar law of any state or other jurisdiction applies in any way to the Sale.

B-7.    Pursuant to Bankruptcy Rules 7062, 9014, and 6004(h) this order shall be effective immediately upon entry.  The Trustee, the Debtors and the Buyer are authorized to close the Sale immediately upon entry of this order.

B-8.    The transactions contemplated by the Transaction Documents are undertaken by the Buyer without collusion and in good faith, as that term is defined in 11 U.S.C. § 363(m), and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale, unless such authorization is stayed pending such appeal.  The Buyer is a good faith buyer within the meaning of 11 U.S.C. § 363(m) and, as such, is entitled to the full protections of 11 U.S.C. § 363(m).

B-9.    At or promptly after the Closing, the Trustee is hereby authorized and directed to disburse the Sale Proceeds as follows:

a.    to HLHZ, the amount of $125,000.00 in net fees and $4,617.00 in outstanding expenses from the Sale proceeds at Closing;

b.    to a bank of the Pre-Petition Agent's choosing, 35% of the remaining Sale Proceeds to be held pursuant to the Second Final Order (i) Authorizing Debtors' Use of Cash Collateral, (ii) Granting Replacement Liens, and (iii) Granting Other Adequate Protection at Docket no. 828; and

c.      the remainder to the Pre-Petition Agent, for the benefit of the Pre-Petition Lenders.

## Authority to Act Generally

B-10.  The Trustee and the Selling Debtors are authorized under 11 U.S.C. § 363(f) to transfer the Purchased Assets on the Closing Date in accordance with the terms of the Transaction Documents and this order.  The Trustee and the Selling Debtors are authorized and empowered under 11 U.S.C. § 363(b) to take any and all actions necessary or appropriate to do the following:  (i) close and consummate the Sale pursuant to and in accordance with the terms and conditions of the Transaction Documents, as they may be modified in accordance with this order; and (ii) execute and deliver, perform under, consummate, implement and close fully the Transaction Documents, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Transaction Documents and the Sale, including any other ancillary documents, or as may be reasonably necessary or appropriate to the performance of the obligations as contemplated by the Transaction Documents and such other ancillary documents.

B-11.  All entities that are in possession of some or all of the Purchased Assets on the Closing Date are directed to surrender possession of such Purchased Assets to the Buyer or its assignee at the Closing.

B-12.  A certified copy of this order may be filed with the appropriate clerk and/or recorded with the recorder to act to cancel the Interests of record.

B-13.  If any person or entity that has filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests shall not have delivered to the Debtors prior to the consummation of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases

of all Interests that the person or entity has, then (i) the Trustee is authorized and directed to execute and file such statements, instruments, releases, and other documents on behalf of the person or entity with respect to the Purchased Assets and (ii) the Buyer is authorized to file, register, or otherwise record a certified copy of this order, which, once filed, registered, or otherwise recorded, shall constitute conclusive evidence of the release of all Interests of any kind or nature whatsoever, as set forth in such filing.

B-14.   On the Closing Date, each creditor is authorized and directed to execute such documents and take all other actions as may be necessary to release any Interests in the Purchased Assets, if any, as provided for herein, as such Interests may have been recorded or may otherwise exist.

B-15.   The Transaction Documents and any related agreements, documents or other instruments may be modified, amended or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not have a material adverse effect on the Debtors' estates.

**Binding Nature of Sale: Transfer of Interests to Proceeds; No Successor Liability**

B-16.   The terms and provisions of this order and the Transaction Documents shall be binding in all respects upon the Buyer, its successors and assigns and the Debtors, any trustees thereof, its estate, all creditors and shareholders of the Debtors, and all interested parties and their respective successors and assigns.  Nothing contained in any chapter 11 plan confirmed in the bankruptcy cases of the Debtors or the order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the Transaction Documents or this order.

B-17.   The Purchased Assets shall be transferred to the Buyer upon and as of the Closing Date.   Such transfers shall constitute legal, valid, binding and effective transfers of such Purchased Assets and shall be free and clear of all Interests.  All such Interests shall attach to the

proceeds of the Sale in the order of their priority, with the same validity, force and effect that they now have as against such Purchased Assets, and subject to any otherwise valid claims and defenses the Debtors and their estate may possess.

B-18.   This order shall be effective as a determination that, on the closing of the Sale, all Interests of any kind or nature whatsoever attaching to the Purchased Assets have been unconditionally released and discharged as to the Purchased Assets, and that the conveyances described herein have been effected.

B-19.   The Buyer has given substantial consideration under the Transaction Documents for the benefit of the holders of Interests.  The consideration given by the Buyer shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer, which releases shall be deemed to have been given in favor of the Buyer by all holders of Interests.  The Buyer shall not have any liability or other obligation of the Debtors arising under or related to the Purchased Assets.  Additionally, except as otherwise expressly provided in the Transaction Documents, the Buyer shall not have any liability or other obligation of the Debtors arising under or related to the Purchased Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Transaction Documents:  the Buyer shall not be liable for any claims against the Debtors or any of its predecessors or affiliates; and the Buyer shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the applicable Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing, including, but not limited to, liabilities on account of any taxes arising, accruing or

payable under, out of, in connection with, or in any way relating to the operation of the Purchased Assets prior to the Closing.

B-20. Despite any implication to the contrary in Bid Procedures Section B, Buyer is not acquiring or assuming Sellers' liabilities, and is not subject to any successor liability for the liabilities and obligations of Sellers, and Buyer is not assuming any liabilities whatsoever of either Mexican Entity; rather, Buyer is buying Shares of Mexican Entities that retain their own assets and liabilities except as set forth in the Agreement and the Sale Order, all according to applicable law. Notwithstanding any language in the Bid Procedures Order, Buyers are not assuming and shall not assume any liabilities of the Mexican Entities, including without limitation, any liabilities for income, payroll, sales, property or other tax liabilities or any indebtedness for borrowed money or obligations owed to the Sellers.

B-21. The Debtors and the Trustee shall not be liable for any claims against the Buyer or any of its predecessors (if any) or affiliates. The Debtors and the Trustee shall have no vicarious liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the applicable Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Buyer or any obligations of the Buyer arising on or after the Closing.

B-22. This order is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be

required to report or insure any title or state of title in or to any lease. Each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Transaction Documents.

**Future Obligations, Proceedings and Jurisdiction**

B-23. All transfers of property of the estate effected by this order and performance of the SPA shall remain valid and effective notwithstanding a subsequent dismissal of this case, and 11 U.S.C. § 349(b)(3) shall not apply to the property of the estate that is the subject of this order and the SPA.

B-24. The Court shall retain jurisdiction, among other things, to interpret, implement, and enforce the terms and provisions of this order and, to the extent provided therein, the Transaction Documents, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which a Debtor or the Trustee is a party or which has been assigned to the Buyer, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale. Notwithstanding the immediately preceding sentence, if the Court abstains from exercising or declines to exercise such jurisdiction, or is without jurisdiction with respect to the Transaction Documents or this order, such abstention, refusal, or lack of jurisdiction shall have no effect upon, and shall not control, prohibit, or limit the exercise of jurisdiction of any other Court having competent jurisdiction with respect to any such matter.

B-25. After the consummation of the Sale, the Buyer, and any successor, assignee, transferee, buyer, or acquirer of some or all of the Purchased Assets shall provide the Trustee and his counsel and counsel to the Committee and its and counsel, reasonable access upon reasonable notice (but not less than two (2) business days notice) to review and copy, if necessary, the books

and records (and such books and records shall be maintained) acquired from the Debtors that existed on the consummation of the Sale from the date of the Sale for a period of three (3) years after the date that the Sale closes.

### Interpretation

B-26.   Nothing in this Order or the Transaction Documents shall be construed to release or nullify any liability to any governmental entity under police or regulatory requirements that any entity would be subject to as the owner of the capital stock of the Mexican Entities after the closing, except to the extent otherwise compromised.

B-27.   The failure specifically to include any particular provision of the Transaction Documents in this order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Transaction Documents be authorized and approved in their entirety.

B-28.   Nothing in this order constitutes a determination of the validity, priority or extent of any claim against any Debtor's estate or any Interest in any property.  Without limitation, such words as "lien," "claim," and "secured" describe but do not adjudicate.

B-29.   All time periods set forth in this order shall be calculated in accordance with Bankruptcy Rule 9006(a).

B-30.   The terms of this order are nonseverable and mutually dependent.  To the extent that this order is inconsistent with any prior order or pleading with respect to the Sale Motion, the terms of this order shall govern.

### ###END OF ORDER###